IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEREMY ALLEN and TAMARA** | § | |
| **LA SALLE ALLEN,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-949-L-BN** |
| | § | |
| **NAVY FEDERAL CREDIT UNION,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant Navy Federal Credit Unition's Motions to Dismiss Plaintiffs' First Amended Complaint ("Motion") (Doc. 12), filed July 9, 2024, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6); Plaintiffs' Motion for Jurisdictional Consolidation and Transfer of Case to Federal Court (Doc. 30), filed October 28, 2024; Plaintiffs' Supplemental Motion to Consolidate and Transfer and Notice of Fraud Upon the Court with Clear and Convincing Evidence (Doc. 34), filed November 21, 2024; Plaintiffs' Motion to Amend Complaint (Doc. 35), filed December 14, 2024; the January 13, 2025 Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 43), addressing the forgoing motions by the parties; and Plaintiffs' Motion for Leave to File Third Amended Complaint and Request for Judicial Scrutiny (Doc. 47), filed January 26, 2025.  Plaintiffs also filed a number of other documents after issuance of the Report, some of which are titled objections to the Report.

For the reasons herein explained, the court **accepts** the magistrate judge's Report (Doc. 43; **overrules** Plaintiffs' objections; **grants** Defendant's Motion (Doc. 12) to the extent dismissal of the claims in Plaintiffs' live pleadings is sought pursuant to Rule 12(b)(6); **denies** Plaintiffs'

Motions to amend their pleadings (Docs. 35, 47); **dismisses with prejudice** all claims by Plaintiffs against Defendant in their First Amended Complaint. *See* supra n.1 (listing claims). The court also **denies** Plaintiffs' remaining motions for consolidation and transfer (Docs. 30, 34).

## I. Background

With respect to Defendant Navy Federal Credit Unionʼs ("Defendant" or "Navy Federal") Motion, the magistrate judge entered his Report on January 13, 2025, recommending that the court deny Defendantʼs Motion (Doc. 12) to the extent dismissal is sought under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on Ms. Allenʼs standing to sue, but grant the Motion to the extent dismissal is sought under Federal Rule of Civil Procedure 12(b)(6), and dismiss with prejudice all claims by Plaintiffs against Navy Federal pursuant to Rule 12(b)(6).[1] The magistrate judge further recommended that the court deny Plaintiffsʼ requests: (1) for leave to further amend their pleadings (Doc. 35); and (2) to consolidate this lawsuit with one in state court (Docs. 30, 34). With respect to Plaintiffsʼ request to amend their pleadings, the magistrate judge reasoned that Plaintiffs should not be allowed to further amend their pleadings because they have now pleaded their best case and shown that further leave to amend would be futile.

---

[1] The magistrate judge construed Plaintiffsʼ live pleadings as asserting the following claims:

> The Allens have sued Navy Federal because, they allege, the credit union wrongly froze Mr. Allenʼs accounts, causing them financial harm and emotional distress. And, liberally construed, the Allens assert claims for negligence and breach of contract and under several federal and state laws, including the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq*. ("FDIA"); regulations underlying the Federal Credit Union Act ("FCUA"), 12 C.F.R. part 700; the Truth in Savings Act, 12 U.S.C. § 4301 *et seq*. ("TISA"); the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA"); 12 C.F.R. § 1006.22[, one of regulations implemented by the Consumer Financial Protection Bureau or CFPB that is aimed at preventing debt collectors from using unfair or unconscionable means to collect a debt]; and the Texas Finance Code.

Report 1, 9 (citing Docs. 3 & 6-8).

Plaintiffs' deadline for filing objections to the Report was January 27, 2025. After the Report was entered on January 13, 2025, Plaintiffs filed the following documents between January 21, 2025, and February 11, 2025:

1. Plaintiffs' Objections and Request for Judicial Scrutiny Pursuant to Local Rule 7.4 (Doc. 45), which requests reconsideration of their motion for consolidation and transfer;

2. Plaintiffs' Objection to the Magistrate Judge's Recommendation and Request for Judicial Scrutiny (Doc. 46), consisting of 140 pages of materials, including objections by Plaintiffs with respect to the magistrate judge's recommendation regarding their request to consolidate/transfer and further amend, and their conclusory assertion that their proposed Third Amended Complaint includes their "best-pled" allegations;[2]

3. Plaintiffs' Motion for Leave to File Third Amended Complaint and Request for Judicial Scrutiny (Doc. 47) in which Plaintiffs appear to argue the merits of their claims without addressing the pleading defects identified in the Report;[3]

4. Plaintiffs' "Additional Exhibits for Objection" (Doc. 49), consisting of 172 pages of materials that include documents filed in the state court action by Plaintiffs against Chris Fernandez, a representative of Defendant;

5. "Plaintiffs' Objection to Magistrate's Conclusion Regarding Futility of Amendment" (Doc. 50), which attaches a proposed Third Amended Complaint, in which Plaintiffs allege that relief is sought under the following state and federal statutes:

   • Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*;
   • Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*;
   • Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*;
   • Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq.*;
   • Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5301 *et seq.*; including violations of Unfair, Deceptive, or Abusive Acts or Practices (UDAAP) provisions;
   • Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801 *et seq.*, protecting consumers' personal financial information;
   • Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691 *et seq.*, prohibiting discriminatory lending practices;
   • Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, addressing patterns of racketeering activity;
   • Identity Theft Enforcement and Restitution Act (ITERA), 18 U.S.C. § 1028 *et seq.*, targeting identity theft violations;

---

[2] Some of the materials in this filing are duplicative of those included in Doc. 49.

[3] To this motion, Defendant filed a response (Doc. 58), to which Plaintiffs replied (Doc. 60).

- Bank Secrecy Act (BSA), 31 U.S.C. § 5311 *et seq.*, regarding financial transparency and compliance;
- Home Mortgage Disclosure Act (HMDA), 12 U.S.C. § 2801 *et seq.*, requiring accurate mortgage lending disclosures;
- Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code § 17.41, *et seq.*, protecting consumers against deceptive practices;
- Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et seq.*, addressing abusive debt collection tactics;
- Texas Business and Commerce Code—Chapter 20 (Consumer Credit Reporting), Tex. Bus. & Com. Code § 20.01 *et seq.*;
- Texas Estates Code—Chapter 752 (Statutory Durable Power of Attorney), Tex. Estates Code § 752.001 *et seq.*, governing the use and enforcement of durable POAs;
- Texas Civil Practice and Remedies Code—Chapter 41 (Exemplary Damages), Tex. Civ. Prac. & Rem. Code § 41.001 *et seq.*;
- Texas Penal Code—Chapter 32 (Fraud and Misrepresentation), Tex. Penal Code § 32.01 *et seq.*;
- Texas Government Code—Chapter 2260 (Claims Against the State), Tex. Gov't Code § 2260.001 *et seq.*; and
- Texas Uniform Fraudulent Transfer Act (TUFTA), Tex. Bus. & Com. Code § 24.001 *et seq.*, addressing fraudulent financial transfers.

Pls.' Proposed Third Am. Compl. (Doc. 50 at 8-10).

6. "Additional Exhibits for Objection" (Doc. 52), which was docketed as "ADDITIONAL ATTACHMENTS to [50] Third Amended Complaint filed by Plaintiff Tamara Roberson."

7. Plaintiffs' Notice of Filing Exhibits in Support of Third Amended Complaint (Doc. 53), which Plaintiffs contend provides "additional factual support regarding Defendant's unfair, deceptive, and abusive acts, including misleading security procedures, unauthorized account freezes, and inconsistent handling of funds." Doc. 53 at 1. Plaintiffs further contend that these exhibits evidence:

• Navy Federal's pattern of financial misconduct, including unauthorized account freezes, deceptive practices, and financial harm to consumers.

• Consumer Financial Protection Bureau (CFPB) complaints demonstrating that other consumers have reported similar conduct.

• Audio recordings and summaries, revealing misleading and inconsistent actions by Navy Federal's security and financial departments.

• Relevant Consumer Financial Protection Act (CFPA) statutes that provide context for Defendant's unlawful conduct.

8. "Plaintiffs' Notice of Procedural Irregularities in State Court Judgment & Request for Judicial Scrutiny to Prevent the Use of an Improperly Obtained Judgment in Federal Court" (Doc. 54);

9. Response to Electronic Order No. 32, requiring Plaintiffs to file a certificate of interested persons (Doc. 55);

10. Notice of No Opposition and Motion to Vacate Judgments Rendered to an Improper Party and Due to Fraud Upon the Court (Doc. 56);

11. Plaintiff's Reply to Defendant's Opposition to Motion to Vacate Judgment docketed as "Notice of Related Case DC-23-20549" (Doc. 57); and

12. Plaintiffs' "Notice to Prevent Defendant's use of Res Judicata or Collateral Estoppel and Request for Judicial Notice" docketed as "Notice of *See-Doc* 42" (Doc. 59).

In addition, Plaintiffs allege claims against Defendant in the proposed Third Amended Complaint, which they describe as claims for breach of contract, breach of the power of attorney, fraud and misrepresentation, tortious interference with business expectancy, fraud upon the court, emotional distress, defamation, loss of collateral/conversion, breach of fiduciary duty (based on durable power of attorney), and unjust enrichment, for which they seek damages (actual, statutory, and punitive damages), injunctive relief, a declaratory judgment, and attorney's fees.

Plaintiffs assert that their proposed Third Amended Complaint is the "First Substantive Attempt to Plead Their Claims," and that the "procedural history of this case demonstrates that the prior complaints were either limited or rendered moot" because the First Amended Complaint was filed only for the purpose of adding Jeremy Allen's signature per court order, and the Second Amended Complaint was "[f]iled as part of a motion to consolidate and transfer," which Plaintiffs argue was "rendered moot by Magistrate Judge Horan's denial of the motion."  Doc. 50 at 1-2. Plaintiffs also note that "the state case has since concluded, making the Second Amended Complaint irrelevant to the current federal claims."  *Id.* at 2.

## II.    Discussion

Except for Document Nos. 45 through 47, all of the foregoing documents were filed after the January 27, 2025 deadline for filing objections to the Report.  Thus, Document Nos. 49, 50 and 52 through 57 were not filed timely, and they were filed without first seeking and obtaining leave of court to file them after expiration of the objection deadline.  Even if the court considers all of the forgoing post-Report filings (timely and untimely) and construes them as objections to the Report, the court is not convinced that Plaintiffs should be allowed to further amend their pleadings.

Plaintiffs' post-Report filings do not attempt to show that the magistrate judge erred in concluding that their current pleadings do not contain factual allegations as required to satisfy the "substantive plausibility" federal pleading standard, and the court determines that the magistrate judge has not erred.  Plaintiffs, instead, only take issue with the magistrate judge's recommended denial of their requests to amend their pleadings and transfer/consolidate this lawsuit with the one in state court. Given Plaintiffs' assertion that "the state case has since concluded, making the Second Amended Complaint [and related request to transfer/consolidate] irrelevant to the current federal claims" (Doc. 50 at 2), their request to transfer and consolidate this lawsuit with the one in state court is admittedly **moot**. Regardless, the magistrate judge correctly notes that Plaintiffs have failed to provide any authority that would permit the undersigned to transfer and consolidate this federal action with any state court proceedings, and the undersigned is not aware of any such authority. Plaintiffs' request for the court to vacate judgments also appears to pertain to the judgment(s) entered in the same state court case and fails for the same reason. Thus, even if not moot, these objections are **overruled**.

With respect to their request to amend for purposes of asserting the claims in their proposed Third Amended Complaint, Plaintiffs provided the justification referenced in their post-Report filings that are summarized above. While Plaintiffs assert that the Factual Background section of their proposed Third Amended Complaint is "Revised with Comprehensive Details," the factual allegations in this proposed pleading do not support the claims asserted in this document and, in many respects, the allegations are not relevant to the claims asserted.  This is so even considering the other materials filed as exhibits to the proposed pleading. Plaintiffs' proposed pleadings reference a number of statutes and case law but, as before, are short on necessary factual allegations. Specifically, the facts alleged by Plaintiffs do not in any respect involve credit reporting, debt collection, lending, disclosure of Plaintiffs' personal identifying information, mortgage lending disclosures, actions in fraudulent transfers, racketeering activity, Plaintiffs' making required reports or keeping records in relation to a bank account; or contract claims against the State of Texas.  Thus, any claims for alleged violations of the **FCRA; FDCPA; TILA; GLBA; ECOA; RICO; ITERA; BSA;[4] FSA; HMDA; the Texas Debt Collection Act, Chapter 20 of the Texas Business and Commerce Code (Tex. Fin. Code Ann. § 392.001); Chapter 2260 of the Texas Government Code (Tex. Gov't Code Ann. § 2260); and TUFTA** fail as a matter of law.

Plaintiffs' claims for alleged violations of the **GLBA** also fail because this statute does not create a private cause of action. *See Williams v. Santander Consumer USA Holdings, Inc*., No. 3:21-CV-3176-D, 2022 WL 562896, at *7 (N.D. Tex. Feb. 24, 2022) (citing cases). Similarly, the Dodd-Frank Wall Street Reform and Consumer Protection Act, which created the UDAAP and the

---

[4] *See Bittner v. United States*, 598 U.S. 85, 98 ("[T]he Bank Secrecy Act's (BSA) 'purpose' is to require certain 'reports' or 'records' that may assist the government in everything from criminal and tax to intelligence and counterintelligence investigations.") (quoting 31 U.S.C. § 5311).

CFPB relied on by Plaintiffs,[5] does not provide a private cause of action of the type Plaintiffs attempt to plead here. *See Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015) (no private cause of action under Dodd-Frank for unfair, deceptive, or abusive acts or practices); *Deutsche Bank Nat'l Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1120 (M.D. Fla. 2013) (no private cause of action under UDAAP); *Carmon v. Carrington Mortg. Servs., LLC*, No. 4:22-CV-03534, 2023 WL 9184038, at *8 (S.D. Tex. Dec. 5, 2023), *report and recommendation adopted*, No. 4:22-CV-03534, 2024 WL 1476162 (S.D. Tex. Jan. 12, 2024) ("[C]ourts around the country agree that the CFPA does not authorize private actions. . . . Instead, the Act reserves enforcement power to the Consumer Financial Protection Bureau.") (citing cases); *cf. Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2016 WL 6610835, *6 (N.D. Ind. Nov. 8, 2016) ("[T]he Dodd-Frank Act only creates a private cause of action in the limited context of a whistleblower, which is inapplicable here.") (citing 12 U.S.C.A. §§ 5301-5641 (2017)).

Plaintiffs cite **Texas Estates Code**, §§ 751.201-751.203, and *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835 (Tex. 2005), for the conclusion that the Texas Estates Code establishes "fiduciary obligations under power of attorney law," and they allege that Defendant violated this statute by "fail[ing] to honor the June 30, 2022 [Power of Attorney] approval, denying Tamara Allen access to the accounts, leading to financial losses." Doc. 50 at 15-16. According to Plaintiffs' post-Report filings, however, Tamara La Salle Allen a/ka/ Tamara La Salle Roberson was acting under a durable power of attorney on behalf of her husband Jeremy La Salle when she attempted but was denied access to a Navy Federal Credit Union account in his name. Any alleged durable power of attorney executed by Jeremy Allen would only make Ms. Allen a fiduciary with respect to her husband. *See In re Guardianship of Delp*, No. 02-22-00300-CV,

---

[5] *See* 12 U.S.C. § 5531.

2023 WL 3643668, at *2 (Tex. App.—Fort Worth May 25, 2023, no pet.) ("[A]n agent under a statutory durable power of attorney owes formal fiduciary duties to her principal.") (citing Tex. Est. Code Ann. §§ 751.101, 752.051, 753.001)). Accordingly, this claim fails as a matter of law.

In addition, Plaintiffs allege that Defendant violated the **Texas DTPA** because its "deceptive practices, including fabricated fraud allegations and arbitrary account freezes, caused significant financial harm and reputational damage." Doc. 50 at 24. Plaintiffs, however, do not allege any facts from which the court can infer that they qualify as consumers, as required for standing to assert a DTPA action under Texas law. *See Hunter v. Navy Fed. Credit Union*, No. 3:24-CV-0788-D, 2024 WL 4244543, at *9-10 (N.D. Tex. Sept. 19, 2024).

The court also questions whether Plaintiffs' allegations regarding "deceptive practices, including fabricated fraud allegations and arbitrary account freezes" are actionable under the DTPA. The allegation "deceptive practices" is conclusory and vague. Plaintiffs' reference to "fabricated fraud allegations" appears to refer to an affidavit that Navy Federal Credit Union employee Christopher Fernandez provided in February 2024 in the state court action brought by Plaintiffs against Defendant. *See* Doc. 52 at 22-27 (referring to Plaintiffs' "Exhibit E" as "Mr. Fernandez['s] perjurious affidavit"); Doc. 50 at 27 (alleging that Defendant violated the DTPA by "[e]ngaging in fraud upon the court by submitting perjured affidavits"). To the extent relief is sought by Plaintiffs under Federal Rule of Civil Procedure 11, that request also fails for the reasons herein explained with respect to their claim for "fraud upon the court" against Defendant's counsel.

In the affidavit, Mr. Fernandez details a verbal altercation involving Ms. Allen that was reported to Navy Federal's security department for investigation and resulted in Ms. Allen being barred from banking in-person at any Navy Federal location for a period of time. Regardless of whether the statements in this affidavit are true, the affidavit was made long after Defendant's

alleged denial of access to Jeremy Allen's account in 2022 and, therefore, could not have *caused* the damages alleged by Plaintiffs. Causation is an essential element of a DTPA cause of action. *See Doe v. Boys Clubs*, 907 S.W.2d 472, 477-82 (Tex. 1995) (addressing the causation element in both negligence and DTPA contexts); *see also* Tex. Bus. & Com. Code Ann. § 17.50(a) (setting forth the producing cause standard of economic damages or mental anguish in the context of a DTPA claim). Thus, this claim likewise fails as a matter of law.

While Plaintiffs also assert claims for "**fraud and misrepresentation**," there are no factual allegations from which the court can plausibly infer the following elements required for such a claim under Texas common law: (1) a material representation was made; (2) the representation was false; (3) the speaker knew it was false or made it recklessly; (4) the speaker made the representation with the intent that the other party should rely on it; (5) the other party relied on it; and (6) the party was injured because of its reliance. *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 406 (5th Cir. 2007); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). Instead, Plaintiffs merely allege that the decision to freeze Jeremy Allen's account was "arbitrary," and Defendant "submitted a perjured affidavit on February 13, 2024, falsely stating that Tamara Allen never submitted a [power of attorney], misleading the court and obstructing legal remedies." Doc. 50 at 11 and 14. Likewise, Plaintiffs' vague and conclusory allegations are insufficient to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b) for such claims. S*ee Williams v. WMX Techs., Inc*., 112 F.3d 175, 179 (5th Cir. 1997) (explaining that fraud allegations must satisfy the "who, what, when, where, and how" required by Rule 9(b)).

Regarding their claim for **emotional distress**, Plaintiffs allege that they "suffered severe emotional distress from Navy Federal's arbitrary account freezes, false accusations of fraud, and obstruction of legal remedies, leading to homelessness, humiliation, and depression." Doc. 50 at

19. They further allege that they "endured severe emotional distress, humiliation, and reputational damage, including homelessness, and financial exclusion" as a result of the "arbitrary account freezes." *Id.* at 13, 19.  Such allegations are conclusory and insufficient to establish any of the elements for such a claim under Texas law. The elements of intentional infliction of emotional distress are: "(1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused the plaintiff emotional distress; and (4) the emotional distress was severe." *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (citing *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)). Intentional infliction of emotional distress was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman–LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citation omitted).  Thus, this claim as pleaded in Plaintiffs' proposed Third Amended Complaint is not viable, as the court cannot reasonably infer from the conclusory facts alleged that Navy Federal would be liable to Plaintiffs with respect to a claim for intentional infliction of emotional distress.

With respect to their **defamation** claim, Plaintiffs merely allege: "Navy Federal's false reporting of delinquencies damaged Plaintiffs' reputation, preventing access to credit and causing loss of credibility in business partnerships, such as the Rick Ross collaboration." Doc. 50 at 19-20 (citing *Brown v. Petrolite Corp.*, 965 S.W.2d 35 (Tex. App.—Houston 1998), regarding "defamation elements under Texas law"). *Id.*

*Brown v. Petrolite Corporation* relied on by Plaintiffs is actually a Fifth Circuit case in which the court explained that, under Texas law, "[a] defamation plaintiff must prove that the allegedly defamatory language is false and that the defendant's publication of the language

proximately caused the plaintiff's damages." 965 F.2d 38, 43 (5th Cir. 1992) (citing *Trevino v. Espinosa*, 718 S.W.2d 848, 851 (Tex. App.—Corpus Christi 1986, no writ) (proof of falsity required); and *Reicheneder v. Skaggs Drug Ctr.*, 421 F.2d 307, 311-12 (5th Cir. 1970) (publication and proximate causation required)). Similarly in *Walker v. Beaumont Independent School District*, 938 F.3d 724, 743 (5th Cir. 2019), the Fifth Circuit explained that Texas law establishes the following elements for an actionable claim of defamation: "(1) publication of a false statement of fact to a third party, (2) the statement must concern the plaintiff and be defamatory, (3) the publication must be made with the requisite degree of fault, and (4) the publication must cause damages." 938 F.3d 724, 743 (5th Cir. 2019) (citations omitted). A statement is defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *Id.* (citations omitted).

Plaintiffs' proposed Third Amended Complaint only mentions "delinquencies" once and provides no facts from which the court can ascertain what is meant by this.[6] Even assuming that Plaintiffs' allegation above regarding the reporting of delinquencies is sufficient to satisfy the element regarding "publication of a false statement," Plaintiffs do not allege that the publication was made to Rick Ross or any other third parties by Defendant, or that Rick Ross or anyone else who transacted with Plaintiffs was aware of such "delinquencies." Instead, Plaintiffs pleadings suggest that they lost out on certain business opportunities because they lacked the financial

---

[6] Some of the documents filed by Plaintiffs after the Report reflect that certain credit card companies notified Jeremy Allen that his accounts with them were delinquent, and these notices were forwarded via e-mail by Plaintiffs to Chris Fernandez, accusing him of "trash[ing]" Mr. Allen's credit score. One of these credit alerts appears to have been provided by Defendant via e-mail to "adventuresofachamp@gmail.com," notifying that Trans Union was reporting an account of Mr. Allen's as delinquent that affected his credit score, and this e-mail was in turn forwarded by Jeremy Patrick to Chris Hernandez. It is unclear, though, how Jeremy Patrick is connected to this case or Plaintiffs, or whether the e-mail address noted is one associated with Plaintiffs. *See* Doc. 49 at 49-56.

Memorandum Opinion and Order – Page 12

funding necessary to pursue the opportunities while Mr. Allen's bank account was frozen. Accordingly, Plaintiffs' proposed amendment does not set forth factual allegations from which the court can reasonably infer that Navy Federal is liable for defamation under Texas law based on the conduct alleged.

Plaintiffs' proposed Third Amended Complaint also includes a claim for **breach of contract** under Texas common law.[7]  The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (applying Texas law and citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. Civ. App.—Houston [1st Dist.] 2001, no pet.)). "A breach occurs when a party fails to perform a duty required by the contract." *Smith Int'l, Inc.*, 490 F.3d at 387 (citation omitted). "Whether a party has breached a contract is a question of law for the court." *X Techs., Inc. v. Marvin Test Sys., Inc*., 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

To recover damages for breach of contract, a plaintiff must allege that he or she suffered a pecuniary loss as a result of the breach. *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 64 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "Such losses must be the natural, probable, and foreseeable consequence of the defendant's conduct." *Southern Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 323-24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)

---

[7] Defendant suggests in its Motion that Virginia law might apply to Plaintiffs' state law claims, but it does not explain the reasoning behind this assertion and, instead, contends that Plaintiffs' claims fail even if Texas law applies as proposed by Plaintiffs.  As the court does not know the basis for Defendant's assertion that Virginia law might have some applicability in this case, the court also applies Texas law in assessing the validity and sufficiency of the Texas-based claims in Plaintiffs' proposed Third Amended Complaint.

(citing *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981) (other citations omitted)). "[A] plaintiff may not recover breach-of-contract damages if those damages are remote, contingent, speculative, or conjectural." *Southern Elec. Servs., Inc.*, 355 S.W.3d at 323-24. Consequently, "the absence of a causal connection between the alleged breach and the damages sought will preclude recovery." *Id.* (citations omitted). Additionally, profits claimed to be lost are not recoverable under a breach of contract theory if they are "largely speculative or a mere hope for success, as from an activity dependent on uncertain or changing market conditions, on chancy business opportunities, or on promotion of untested products or entry into unknown or unproven enterprises." *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 290 (Tex. App.—Fort Worth 2015, no pet.) (quoting *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 206-07 (Tex. App.—Fort Worth 2004, pet. denied)).

Generally, the measure of damages for breach of a contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied). Such damages may include those for reasonably certain lost profits. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Lost profits may be: (1) direct damages, that is, profits lost on the contract itself; or (2) consequential damages, such as profits lost on other contracts resulting from the breach. *Mood*, 245 S.W.3d at 12. To be recoverable, however, consequential damages must be foreseeable and directly traceable to the wrongful act and result from it. *Stuart v. Bayless*, 964 S.W.2d 920, 921 (Tex. 1998) (citation omitted). Accordingly, consequential damages are generally not recoverable under a breach of contract theory unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach. *Stuart*, 964 S.W.2d at 921.

In an apparent attempt to cure the pleading deficiencies regarding the breach of contract claim including in their prior pleadings,[8] Plaintiffs allege in their proposed Third Amended Complaint that: (1) "Trusted User Agreement (TUA), Section 15—Obligates Navy Federal to complete authorized transfers"; (2) Defendant "Navy Federal froze accounts and failed to complete transfers properly, violating the TUA's Section 15 liability clause"; and (3) "Plaintiffs suffered direct damages" in the form of "Loss of 2837 Plume Court - $306,000"; "Loss of Chrysler 200 - $15,000"; and "Food Truck Business Loss - $20,000." Doc. 50 at 14. In the Factual Background section of this pleading, however, Plaintiffs acknowledge that the relevant money transfers by Tamara Allen from Jeremy Allen's account to the accounts of four other individuals were initiated in May 2022 *before* Defendant approved or recognized her durable power of attorney and issued Plaintiffs new membership identification cards in June 2022, and *before* the Trusted User Agreement or TUA was executed in July 2022 that defined her rights as a "Trusted User" to make transfers and Defendant's responsibility to complete such transfers. Doc. 50 at 28. Accordingly, Defendant could not have breached the TUA in failing to complete transfer made by Tamara Allen in May 2022 before the TUA was executed.

Plaintiffs' proposed Third Amended Complaint notes that Defendant similarly froze the accounts of the four intended individual transfer recipients that prevented them from accessing the transferred funds. These four individuals (Tameca Hodge, Kevin Smith, Dionte Doss-Roberson, Christopher Johnson), however, are not parties to this action. Plaintiffs also allege no facts from which the court can reasonably infer that they have standing to pursue claims on behalf of these persons for breach of contract. *See id.* at 27.

---

[8] No factual allegations were included in prior pleadings regarding this claim. Plaintiffs' pleadings merely mentioned the term breach of contract. Report 9.

Additionally, Plaintiffs' allegation regarding the causal connection between their alleged damages and Defendant's conduct (in flagging the transfers as potentially fraudulent, refusing to complete the transfers, and freezing Jeremey Allen's bank account) is far too conclusory and insufficient to enable the court to infer a connection between Defendant's conduct and the damages alleged with respect to Plaintiffs' "Loss of 2837 Plume Court - $306,000"; "Loss of Chrysler 200 - $15,000"; and "Food Truck Business Loss - $20,000." Doc. 50 at 14. The court reaches the same conclusion even if it considers the allegations in the Factual Background section of Plaintiffs' proposed Third Amended Complaint where these damages are discussed. *See Id.* at 10-13. Without more, the connection between these damages and Defendant's conduct is unexplained and thus too attenuated and speculative, and there is no indication that the parties contemplated at the time they executed the TUA that consequential damages such as this would be a probable result of any breach by Defendant. *See Stuart*, 964 S.W.2d at 921. Instead, the copy of the TUA Plaintiffs filed in response to Defendant's Motion refutes any such inference because it specifically states in paragraph 15 that "Navy Federal's liability is limited; we will not be liable for indirect, special, or consequential damages." Doc. 17 at 22.[9]

While a plaintiff's pleadings regarding proximate causation "need not rise to the level of proving that the defendant's breach was the sole cause of damage,"[10] they must consist of more than a threadbare, conclusory recital of this element that enables the court to infer the necessary connection between Defendant's conduct and Plaintiffs' damages. *See Gibson v. Texas Dep't of*

---

[9] This document appears to consist of two merged documents because the paragraphs at 21 to 22 of Doc. 17 are not sequential. They consist of the same numbered paragraphs 12 through 16, and the content of the paragraphs is different. This, however, does not change the fact that paragraph 15 relied on by Plaintiffs expressly precludes the type of indirect, consequential damages sought here.

[10] *Southern Nat'l Bank of Houston v. Crateo, Inc.*, 458 F.2d 688, 697 (5th Cir. 1972) (citing *Houston & T.C.R. Co. v. Maxwell*, 61 Tex. Civ. App. 80, 128 S.W. 160 (1910)) ("[A] showing of proximate caus[ation] [on Texas breach-of-contract claim] need not rise to the level of proving that the defendant's breach was the sole cause of damage.");

*Ins.*, 700 F.3d 227, 233 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Report 5 (*Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "[p]ro se complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient.").

Additionally, Plaintiffs do not allege that they performed as required under the TUA with respect to the transfers they initiated. According to the copy of the TUA submitted by Plaintiffs, there was no limitation on the number of transfers they could make per day, but there was a limitation on the dollar amount that could be transferred per day and every five business days. *See* Doc. 17 at 20. Accordingly, for all of these reasons, Plaintiffs' proposed amended allegations are still too conclusory to support a claim for relief based on breach of contract under Texas law.

Plaintiffs' new claim for "**tortious interference with business expectancy**" similarly fails, as Plaintiffs only allege in conclusory fashion with respect to this claim as follows: "Freezing accounts prevented execution of a $25,000 payment needed to finalize a promotional contract with Rick Ross, costing $500 million in lost business expectancy." Doc. 50 at 17 (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001)). In *Sturges*, the Texas Supreme Court held that, to prevail on a claim for tortious interference with prospective business relations, the plaintiff must additionally prove that the defendant's conduct was "independently tortious or wrongful." *Id.* at 726. The plaintiff is not required to prove an independent tort; instead, the plaintiff need only establish that the defendant's conduct would be actionable under a separate recognized tort. *Id.* Conduct that is merely "sharp" or perceived as "unfair competition," however, is not actionable and cannot form the basis for an action for tortious interference with prospective relations under Texas law. *Id.*

After *Sturges*, Texas courts have adopted the following elements for this tort:

(1) a reasonable probability that the parties would have entered into a contractual relationship;

(2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring;

(3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and

(4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Faucette v. Chantos*, 322 S.W.3d 901, 914 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App—Houston [14th Dist.] 2001, pet. denied)). Plaintiffs do not address these elements or point to factual allegations that would satisfy each of these elements. Further, as this claim is premised on Plaintiffs' breach of contract claim, and the only damages sought with respect to this claim are consequential damages precluded by the TUA, the claim fails on this ground as well.

Next, with respect to their new "**Loss of Collateral/Conversion**" claim under Texas law, Plaintiffs merely allege: "Navy Federal's unlawful freeze of accounts caused" the "[l]oss of 2837 Plume Court property ($306,000); and the "[r]epossession of the Chrysler 200 ($15,000)." Doc. 50 at 21. For support, Plaintiffs' proposed Third Amended Complaint cites *Bandy v. First State Bank*, 835 S.W.2d 609 (Tex. 1992), for the conclusion that Texas "recogniz[es] claims for property conversion." Doc. 50 at 20-21.

In *Bandy*, the court defined conversion as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Id.* at 622 (quoting *Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.*, 774 S.W.2d 746, 750 (Tex. App.—Dallas 1989, writ denied)). Thus, under Texas law, the party asserting a claim for conversion must allege that:

**Memorandum Opinion and Order – Page 18**

the plaintiff[ ] owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property.

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018) (quoting *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 748 (Tex. App.—El Paso 2013, no pet.)).

"Money may be the subject of an action for conversion if the fund can be described or identified as a specific chattel." *First Nat'l Bank of Bellaire v. Hubbs*, 566 S.W.2d 375, 377 (Tex. Civ. App.—Houston [1st Dist.] 1978). In *Texas v. Chase Securities, Incorporated*, the court explained how this concept applies to an action for conversion of money in a bank account:

An action for conversion of money will lie if it is delivered for safe-keeping, the keeper claims no title, and the money is required and intended to be kept segregated and substantially in the form in which it was received or as an intact fund. *Estate of Townes v. Townes*, 867 S.W.2d 414, 419–20 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Money that is deposited in a bank under a special deposit agreement having the characteristics of a bailment contract may be the subject of a conversion action, as can money which constitutes a trust when, with knowledge of its character, it is applied by the bank in which it is held in trust to reduce the debt of the depositor to the bank.

*Texas v. Chase Sec. of Tex., Inc.*, No. 14-00-01078-CV, 2002 WL 27294, at *2 (Tex. App.—Houston [14th Dist.] Jan. 10, 2002, pet. denied).

Here, there is no indication from Plaintiffs' proposed amended pleadings or the TUA filed by Plaintiffs in response to Defendant's Motion that the money in Jeremy Allen's bank account was required or intended to be kept segregated; nor is there any indication that it was deposited under a special agreement having the characteristics of a bailment contract or held in trust. *See id.* "Whe[n] no agreement requires money to be segregated or kept in a particular form, the requirements for 'specific money' giving rise to a cause of action for conversion are not met." *Id.*

(citing *Phippen v. Deere and Co.*, 965 S.W.2d 713, 724 (Tex. App.—Texarkana 1998, no pet.)).

Therefore, Plaintiffs have not stated a valid claim for conversion under Texas law with respect to

the funds at issue here, and it does not appear that they would be able to do so even allowed to

further amend. *See id*. at *2; *see also E-Dealer Direct v. Bank of Am., N.A.*, No. EP-21-CV-62-

DB, 2021 WL 2115299, at *4 (W.D. Tex. May 25, 2021) (dismissing conversion claim premised

on the plaintiffs' alleged inability to access funds in their accounts with the defendant as a result

of the defendant freezing the accounts, reasoning that the plaintiffs' pleadings and the record "leads

to the inference that Plaintiffs simply sought access to money in ordinary deposit accounts with

Defendant. The Plaintiffs state that they need access to the accounts to run their businesses,

suggesting that the accounts contain ordinary deposits of liquid currency rather than 'specific

money.'").

With respect to their new proposed **unjust enrichment** claim, Plaintiffs allege that "Navy

Federal retained Plaintiffs' funds unlawfully for 14 months, benefiting financially while causing

Plaintiffs financial harm." Doc. 50 at 21-22 (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*,

832 S.W.2d 39 (Tex. 1992)). Under Texas law, unjust enrichment claims are "unavailable when

a valid, express contract governing the subject matter of the dispute exists." *See Coghlan v.

Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (citing *Woodard v. Sw. States, Inc*., 384

S.W.2d 674, 675 (Tex. 1964)). The only basis for Plaintiffs' allegation that Defendant unlawfully

retained the funds in Jeremy Allen's account while it was frozen is the TUA, which governed their

access to the account. Thus, their unjust enrichment claim arises from the TUA and fails as a

matter of law.

Finally, Plaintiffs seek to assert a new claim for "**fraud upon the court**" pursuant to

Federal Rule of Civil Procedure 11(b). Doc. 50 at 18-19 (citing *In re Coordinated Pretrial*

*Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180 (8th Cir. 1976)). With respect to this proposed claim, they allege: "Navy Federal's attorney Michael Hess knowingly submitted a false Rule 11 Agreement and Notice of Settlement, misleading the court into dismissing [their] claims prematurely, resulting in delays and financial harm." *Id.* at 19. The only other reference to Michael Hess in Plaintiffs' proposed Third Amended Complaint states as follows: "Exhibit E: A phone call with Michael Hess in February 2024—two months before the filing of the federal lawsuit—further demonstrates Defendant's knowledge of Plaintiffs' federal claims and associated damages." Doc. 50 at 2.

> Rule 11(b) states as follows regarding representations to the court:
>
> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11(c)(1) provides that the court may impose sanctions against an attorney, law firm, or party for violations of Rule 11(b). Rule 11(c)(2) requires that motions for sanctions be filed separately from any other motion and specifically describe the conduct that allegedly violates Rule 11(b). Sanctions in the form of payment of a penalty to the court and/or

payment of attorney's fees and expenses directly resulting from the violation may be imposed subject to certain limitations. *See* Fed. R. Civ. P. 11(c)(4)-(5).

Plaintiffs did not file a separate motion as required by Rule 11, and, other than the general, vague, and conclusory allegations noted in their proposed Third Amended Complaint, they do not specifically delineate how Defendant's attorney, Mr. Hess, violated Rule 11(b). Defendant's Motion does not reference any Rule 11 Agreement or Notice of Settlement, and the only other reference to alleged misconduct by Defendant's counsel is contained in Plaintiffs' Supplemental Motion for Consolidation and Transfer (Doc. 34). *See Alley Bros., LLC v. Krishnan*, No. 4:18-CV-742, 2019 WL 1614625, at *2 (E.D. Tex. Apr. 16, 2019) (overruling the defendants' arguments regarding their Rule 11 motion because they raised "only conclusory allegations, which do not support granting such relief"); *Hambric Sports Mgmt., L.L.C. v. Gaylord Sports Mgmt., L.L.C.*, No. 3:09-CV-1662-L, 2011 WL 195680, at *3 (N.D. Tex. Jan. 19, 2011) (denying Rule 11 motion that was not filed via a separate motion and that "failed to specifically describe the conduct" that violated Rule 11).

Moreover, it is evident from the Supplemental Motion for Consolidation and Transfer (Doc. 34) that Plaintiffs are referring to the state court action that they filed against Defendant, which they acknowledge has been resolved.[11]  Regardless, they do not point to any authority that would allow the court to sanction Defendant's counsel for alleged misstatements or misconduct in another action over which the undersigned is not the presiding judge, let alone a state court action.

---

[11] In that motion, Plaintiffs assert that in the state case brought by them against Navy Federal, Defendant's counsel: submitted a "fraudulent Rule 11 agreement" to the state judge, made multiple contradictory statements during a hearing, mischaracterized Plaintiffs' claims, submitted an allegedly perjured affidavit to provide Navy Federal with a defense for freezing Plaintiffs' accounts, and improperly contacted an attorney at a law firm retained by Plaintiffs. Plaintiffs also suggest that Defendant's substitution of counsel was the result of something nefarious, and they accuse the state judge of impartiality for failure to address the alleged contradictions in Defendant's arguments and consideration of what Plaintiffs refer to as "irrelevant affirmative defenses." Doc. 34.

Accordingly, Plaintiffs' "fraud upon the court" claim is not a viable cause of action and does not satisfy Rule 11's requirements for a motion for sanctions.

Additionally, their proposed Third Amended Complaint no longer includes many of the claims contained in their prior pleadings, including their prior claims based on alleged violations of the **FDIA, FCUA, TISA, and the Texas Finance Code**.  For this reason and because Plaintiffs do not assert any objections to the Report's recommended dismissal of these and other claims, the court determines that Plaintiffs have effectively abandoned these claims,[12] or, alternatively, they waived any objections with respect to these claims by not asserting specific objections to the Report regarding them, as well as any prior request to amend with respect to these claims. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave.") (citations omitted).

Having considered Defendant's Motion, the pleadings, file, record in this case, and Report, and having conducted a de novo review of the portions of the Report to which objection was made by Plaintiffs, the court determines that the findings and conclusions of the magistrate judge are correct, and **accepts** them as those of the court.  The court, therefore, **overrules** Plaintiffs' objections for the reasons explained.  It also agrees that Plaintiffs should not be allowed to further amend.

---

[12] *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss). The same reasoning applies here as a result of Plaintiffs' failure to defend certain claims in response to the Report and their decision to submit proposed amended pleadings that no longer include these claims.

Federal Rule of Civil Procedure 15(a)[13] provides that leave to amend shall be "freely" given "when justice so requires," and ordinarily, "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Wiggins v. Louisiana State Univ.-Health Care Services Div.*, 710 F. App'x 625, 627-28 (5th Cir. 2017) (citing *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). Granting leave to amend, however, is not necessary when the plaintiff has pleaded his or her "best case" after being apprised of pleading deficiencies. *Wiggins*, 710 F. App'x at 627 (quoting *Brewster*, 587 F.3d at 768). Likewise, a district court need not grant a motion to amend if doing so would be an exercise in futility. *Wiggins*, 710 F. App'x at 627 (citing *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016)).

The court determines that Plaintiffs have pleaded their best case, and it agrees with the magistrate judge that allowing them to amend their pleadings pursuant to Federal Rule of Civil Procedure 15(a) is not warranted under the circumstances and would unnecessarily delay the resolution of the litigation. Although Plaintiffs are proceeding pro se and assert that they have not had the opportunity to substantively amend their pleadings before, they had the opportunity in response to Defendant's Motion and the magistrate judge's Report to seek to amend and explain how they would cure the deficiencies identified regarding their conclusory pleadings. *See Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.").

---

[13] The decision to allow amendment of a party's pleadings under Rule 15(a) is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Moreover, Plaintiffs filed 26 documents after Defendant moved to dismiss their claims, including three motions that included a motion to amend their pleadings. After the magistrate judge issued his findings, conclusions, and recommendation, Plaintiffs filed 16 additional documents, three of which were filed in error.  These documents contained objections and another motion by Plaintiffs to amend their pleadings to assert the claims in their proposed Third Amended Complaint, including a large number of new claims and some of their prior claims.  Thus, Plaintiffs have had ample opportunity to make their case against Navy Federal, but their proposed amended pleading still falls short for the many reasons detailed.  Accordingly, the court **denies** Plaintiffs' requests to further amend their pleadings (Docs. 35, 47), as allowing them to amend as proposed would be an exercise in futility and would unnecessarily delay the resolution of this action.

## III.    Conclusion

For the reasons discussed, the court **accepts** the magistrate judge's Report (Doc. 43; **overrules** Plaintiffs' objections; **grants** Defendant's Motion (Doc. 12) to the extent dismissal of the claims in Plaintiffs' live pleadings is sought pursuant to Rule 12(b)(6); **denies** Plaintiffs' Motions to amend their pleadings (Docs. 35, 47); **dismisses with prejudice** all claims by Plaintiffs against Defendant in their First Amended Complaint.  *See* supra n.1 (listing claims).  The court also **denies** Plaintiffs' remaining motions for consolidation and transfer (Docs. 30, 34).

**It is so ordered** this 13th day of February, 2025.


Sam A. Lindsay
United States District Judge